## BOOTH v. CONCORDIA FIRE INS. CO. OF MILWAUKEE.

Circuit Court of Appeals, Fourth Circuit.
January 15, 1929.

No. 2767.

J. J. McSwain, of Greenville, S. C. (P. N. Becton, of Greenville, S. C., on the brief), for appellant.

Joseph L. Nettles, of Columbia, S. C. (Stephen Nettles, of Greenville, S. C., on the brief), for appellee.

Before WADDILL and PARKER, Circuit Judges, and COLEMAN, District Judge.

PARKER, Circuit Judge. This was an action at law instituted by the plaintiff, Mrs. Josie Tench Booth, to recover on a policy of fire insurance issued by the defendant, Concordia Fire Insurance Company. Defendant admitted the issuance of the policy and the loss by fire, but pleaded that the policy was rendered void because of violation of the condition against additional insurance; the additional insurance relied upon being a policy alleged to have been issued by the Hartford Fire Insurance Company. The case was three times tried in the court below. On the first two trials the jury failed to agree. On the last the trial judge directed a verdict for defendant, and plaintiff has appealed, assigning such direction of verdict as error. The sole question in the case is whether, viewing the evidence in the light most favorable to plaintiff, it shows conclusively that a contract of insurance was made between plaintiff and the Hartford Company, or whether it merely presents a question for determination by the jury.

The evidence shows that plaintiff is an illiterate woman living near the city of Greenville, S. C. Defendant's policy was issued to her on July 1, 1926. A short while prior thereto she had applied to the agent of the Hartford for a policy, and had told him that she would have to pay the premiums

with money received from a son in a distant city. Hearing from this son that she need not expect further money from him, she testifies that she wrote a letter to the Hartford agent and told him that she was unable to pay the premium, and directed that he cancel the application for the policy. Subsequently she made application for and received the policy from the defendant company, being allowed 60 days by the local agent in which to pay the premium.

The Hartford policy bears date of July 13, 1926, and plaintiff testifies that some time after she received the policy from defendant the Hartford agent came to her home during her absence and left this policy there. It was not countersigned by the local agent of the Hartford, although bearing upon its face the statement that it would be valid only when so countersigned. Plaintiff testifies that she did not regard it as a valid and binding instrument because not countersigned, but thought that the Hartford agent was simply trying to induce her to take a policy, and that she paid no further attention to it. The Hartford agent testifies that plaintiff executed notes for the premium at the time the policy was delivered; but she denies this, and claims that the notes relied on were obtained at the time of the application for the policy which she countermanded, and that they were then signed in blank. She says that, when the Hartford policy was handed to her by the person with whom it had been left by the Hartford agent, she looked at it and said it was "no account"; that she had not paid for it; and that she gave it no further consideration.

Plaintiff contends that she desired only one policy of insurance on her property; that she applied for the policy to defendant after she had directed the Hartford agent to cancel her application; and that she paid the premium to defendant and paid no premium to the Hartford. She testifies that she did not intend to accept a policy from the Hartford, did not consider the Hartford policy in force, and made no claim under it when the fire occurred. There is no evidence nor is there allegation that the fire was of incendiary origin, nor is there anything to indicate that plaintiff has attempted to take any advantage of either of the companies. On the contrary, when the proofs of loss were made out, she expressly directed that a statement be inserted that she was claiming nothing from the Hartford Company.

The defendant's policy contained the standard provision with regard to additional insurance, as follows:

"Unless otherwise provided by agreement in writing added hereto this company shall not be liable for loss or damage occurring.

"Other Insurance. (a) while the insured shall have any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

■■ It is well settled that under this provision the procuring of additional insurance avoids the policy, unless provided for by written agreement added thereto. 26 C. J. 256 et seq. And this result follows, notwithstanding the additional insurance may be invalid. Sugg v. Hartford Ins. Co., 98 N. C. 143, 3 S. E. 732; Spann v. Phœnix Ins. Co., 83 S. C. 262, 65 S. E. 232; 26 C. J. 262. And mere knowledge of such additional insurance on the part of the agent issuing the policy does not estop the company from insisting upon the condition or constitute a waiver thereof. Northern Assurance Co. v. Grand View Building Ass'n, 183 U. S. 308, 22 S. Ct. 133, 46 L. Ed. 213; Northern Assurance Co. v. Case (C. C. A. 4th) 12 F.(2d) 551. And this rule, we think, is not modified by any of the South Carolina statutes relied upon by appellant. Rabb v. N. Y. Life Ins. Co., 108 S. C. 138, 93 S. E. 711; Order of United Commercial Travelers v. Belue (C. C. A. 4th) 263 F. 502, opinion adopted by South Carolina Supreme Court in Belue v. United Com. Travelers, 121 S. C. 179, 117 S. E. 591.

■■ But, to avoid the policy under the condition against other insurance, it is necessary that another contract of insurance be perfected, that is, that there be a meeting of the minds on the other contract, even though it be rendered invalid by some of the conditions of the policy issued pursuant thereto. Incomplete insurance is not a breach of the condition. National Mutual Fire Ins. Co. v. Duncan, 44 Colo. 472, 98 P. 634, 20 L. R. A. (N. S.) 340. And "additional insurance issued by mistake without the request of insured and which he does not seek to enforce will not avoid a prior policy." 26 C. J. 261; North British, etc., Ins. Co. v. Robertson, 134 Ky. 529, 121 S. W. 630.

■ Under the evidence in this case the crucial question is whether there was a meeting of the minds on the contract embodied in the Hartford policy; that is, whether plaintiff accepted that policy as a binding contract of insurance. If she did, as testified by the Hartford agent, the defendant's policy was avoided, even though the Hartford policy was invalid. If, on the other hand, she did not intend to enter into a contract with the Hartford Company, had attempted to revoke her application to it for a policy, and dis-

regarded the policy left at her home because she thought it was worthless on account of not being countersigned by the local agent, then there was no meeting of the minds on the Hartford contract, and the condition of defendant's policy was not violated. The question in the case, then, is a question of fact upon which the evidence is conflicting, and it should have been submitted to the jury for determination.

The defendant relies upon Patrick v. Bowman, 149 U. S. 411, 13 S. Ct. 866, 37 L. Ed. 790, which holds that, where an offer is accepted before notice of revocation is received, the contract is not impaired by the fact that a revocation had been mailed before the letter of acceptance; but we do not think that that case has any application here. Defendant's contention is that revocation of the offer made to the Hartford agent is not shown to have reached him, and that delivery of a policy in accordance with the application completed the contract. This would be a rather technical ground upon which to base the forfeiture of plaintiff's policy with defendant, in view of her testimony as to her attempted revocation and of the rule that forfeitures are not favored by the law; but the position, we think, is not open to defendant, for the reason that the Hartford policy did not purport to be a policy delivered in accordance with the application, but, on the contrary, purported to be void because not countersigned by the local agent. The whole matter, therefore, comes back to the question as to whether there was a meeting of the minds of the parties on a contract of insurance, and whether, pursuant thereto, the Hartford policy was delivered and accepted. If, as we must assume for the purposes of the motion to direct a verdict, the plaintiff did not intend to insure with the Hartford, if she attempted to cancel her application to that company when she learned that she could not pay the premium according to its requirements; and if she ignored the policy later left at her home by the Hartford agent because it appeared to be void upon its face, it would be a mockery of justice to hold that the policy which defendant issued and for which it collected premiums was forfeited because the Hartford agent denied receiving the letter canceling the application. To so hold would be to invoke against plaintiff a forfeiture on account of other insurance, when, if her version of the matter is correct, she did not intend to take other insurance and the issuance thereof was a mistake. We know of no decision which would justify us in laying down so harsh a rule.

From what has been said, it follows that the learned and careful District Judge erred in directing a verdict for defendant, and the judgment of the District Court is accordingly reversed, and the cause is remanded for a new trial.

Reversed.