NATIONAL AID LIFE ASS'N et al. v. MAY et al.

No. 33351. June 7, 1949.

*207 P. 2d 292.*

C. C. Hatchett, of Durant and Savage, Gibson & Benefield, of Oklahoma City, for plaintiffs in error.

Porter Newman, of Durant, for defendants in error.

PER CURIAM. The sole question presented in this appeal is the validity of clauses in insurance policies purporting to limit the liability of the insurance companies in the event the death of the insured was caused by the beneficiary.

Carnell Fry, husband of Maggie L. Fry, brought two actions in the district court of Bryan county upon two life insurance policies, one issued by National Aid Life Association to Maggie Fry for $500, in which Carnell Fry was beneficiary, and one issued by National Aid Life Insurance Company to Maggie L. Fry, in which Carnell Fry was beneficiary, for $1,000. The policy for $500 issued by National Aid Life Association contained the following provision:

"In case the death of any one or more of the parties insured hereunder results from suicide, whether said insured was at the time sane or insane, or in case the beneficiary of any member is the intentional, negligent or otherwise culpable direct or indirect cause of the death of said insured, whether said beneficiary at the time was sane or insane, then and in either event the liability of the Association shall be limited to an amount equal to one tenth of the face value of said policy."

The $1,000 policy issued by National Life Insurance Company contained a similar provision.

Each policy provided for double indemnity where death resulted through external, violent and purely accidental means. The double indemnity rider in the $500 policy contained the following provision:

" . . . providing however, that double indemnity shall not be paid for death resulting from self-destruction or any attempt thereat, whether the insured

at the time was sane or insane; from any unlawful act on the part of the insured, or while engaged in unlawful conduct, or from any unlawful act of any beneficiary of the insured; . . ."

The $1,000 policy provided that the double indemnity provision would not be effective if the death of the insured resulted, among other things, from "homicide, intentional or unintentional, or any attempt thereat."

In each case the insurance company denied liability under the double indemnity provision for the reason that Maggie L. Fry, the insured, died from injuries inflicted upon her by her husband Carnell Fry. For the same reason it denied liability under the policies for any amount in excess of one tenth of the face value of said policies. On motion of the insurance companies Maud May, administratrix of the estate of Maggie L. Fry, was made a party to the actions, and by answer and cross-petition asserted the right of herself and the minor child of Maggie L. Fry to recover from the insurance companies the full amount of the policies.

The cases were consolidated in the trial court, the actions being identical in all respects except as to the amount sued for. By agreement it was stipulated that the issues between Carnell Fry and the insurance companies should be tried to a jury, and the issues between the insurance companies and Maud May, administratrix, should be left to the determination of the court after the jury had returned a verdict in the case of Carnell Fry against the insurance companies. The trial court instructed the jury that if it believed that Maggie Fry came to her death as a result of Carnell Fry taking her life, or causing or procuring her life to be taken, then and in that event Carnell Fry could not recover, and its verdict should be for the defendant. It appears from the evidence that the death of Maggie L. Fry was caused by her husband striking her with a hoe, and the court further instructed the jury that

if it found that Carnell Fry struck Maggie Fry with a hoe, whether or not he did so with any criminal intent, it should find for the insurance companies if her death was either the direct or indirect result of the blow. The jury returned a verdict in favor of the insurance companies and against Carnell Fry.

Thereafter the issues between the insurance companies and Maud May, administratrix, and as next friend of the minor heir of Maggie L. Fry, was submitted to the trial court without a jury, and the trial court rendered judgment in favor of the administratrix and the minor, and against the insurance companies, for double the face value of the policies, the judgment on the $500 policy being for $1,000, and the judgment on the $1,000 policy being for $2,000. The insurance companies appeal. Carnell Fry, plaintiff in the actions below, does not appeal, so that the only issues involved are between the insurance companies and the administratrix and the minor heir.

The insurance companies here contend that the clauses in the policies limiting their liability to 10 per cent of the face amount of the policies and relieving them of the liability under the double indemnity provisions of the policies, as above set forth, are valid and enforceable, and that in such case the verdict of the jury having established that Maggie L. Fry came to her death as a result of an assault upon her by her husband, their liability is limited to one tenth of the face amount of the policies. That amount they tender into court as the limit of their liability. We agree with this contention.

While no case has been cited, and we have found none, where the liability of the insurance company under the policy has been by the express terms thereof limited to a specific amount or a percentage of the face value of the policy, in case the death of the insured results from the unlawful act of the beneficiary, numerous cases are cited holding that an insurance com-

pariy by the express provisions of its policy may relieve itself of all liability where the death of the insured results from the wrongful act of the beneficiary.

In 45 C.J. p. 250, section 193, the general rule is thus stated:

"If the beneficiary murders the member and so loses his rights as such, the fund may be recovered by such other persons as would take had no beneficiary been designated, or if the designated beneficiary were ineligible, *unless the certificate of insurance provides otherwise.*" (Italics ours.)

And in Appleman, Insurance Law and Practice, vol. 1, p. 453, the author, after stating that a beneficiary who murders the insured cannot recover the policy benefits, but that the insurer is not in such case relieved of liability, says:

"There are, however, three exceptions to that rule; three situations in which the insurer is absolutely relieved of all liability under the contract. They are as follows: 1. Where the policy was procured by the beneficiary intending at the time the insurance was secured to murder the insured; 2. Where the policy specifically makes the contract entirely void in such contingency; . . ."

The two works above quoted cite numerous cases in support of the rule they announce. See, also, 91 A.L.R. pp. 1488, 1490, Note 4, and 70 A.L.R. p. 1540, Note 4, where cases supporting the rule are analyzed. Obviously, if liability could be entirely excluded in such case, it could be limited.

It is stipulated and agreed by the parties hereto that the policies sued upon are issued under the provisions of our insurance laws applicable to mutual benefit associations. 36 O.S. 1941 §§691-707.

The administratrix contends that by 36 O.S. 1941 §695 (b), such associations must specify in their policy or certificate the sum of money they promise to pay, which shall not be less than the face amount of the policy, and that such provision precludes such insurance company or association from limiting its liability to an amount less than the face of the policy. But said section further provides:

"Upon the occurrence of such contingency, unless the contract shall have been void by fraud or by breach of its conditions, the corporation shall be obligated to the beneficiary for such payment at the time and in the amount specified in the policy or certificate."

The administratrix also relies upon 84 O.S. 1941 §231. The applicable portion of that section reads as follows:

" . . . and no beneficiary of any policy of insurance or certificate of membership issued by any benevolent association or organization, payable upon the death or disability of any person, who in like manner takes, or causes or procures to be taken, the life upon which such policy or certificate is issued, or who causes or procures a disability of such person, shall take the proceeds of such policy or certificate; but in every instance mentioned in this section all benefits that would accrue to any such person upon the death or disability of the person whose life is thus taken, or who is thus disabled, shall become subject to distribution among the other heirs of such deceased person according to the laws of descent and distribution, in case of death, . . ."

Administratrix calls attention to Equitable Life Assurance Society v. Weightman, 61 Okla. 106, 160 P. 629, in which we held that a beneficiary was barred from taking the benefits of an insurance policy by reason of the fact that she had murdered the insured, and that in such case a trust arose by operation of law in favor of the estate of the insured. In that case, however, we pointed out that the policy itself made no provision for the disposition of the liability nor of its benefits in the event of the murder of the insured by the beneficiary, and that in the absence of such specific provision by the parties in their contract the status of the parties must be ascertained by refer-

ence to the rules of law and equity applicable to the situation. We further pointed out that it contained no provision that it should be forfeited in the event of the murder of the insured and no condition of any kind against murder, and held that in such case, while the beneficiary was barred from benefiting by her own wrongful act, the insurance company was not absolved of liability, but that the rights of the beneficiary inured to the estate of the insured. There is nothing in this decision indicating that this court intended to say or intimate that a provision in an insurance policy limiting or excluding liability if the insured was murdered by the beneficiary was for any reason invalid.

An insurance policy is a contract between the insurance company issuing the policy and the insured. In Pitchford v. Electrical Workers Benefit Association, 189 Okla. 82, 113 P. 2d 591, we said:

"An insurance policy is a contract and must be given the same construction as any other contract except in a case of doubt, in which case the doubt will be resolved in favor of the insured. Prudential Ins. Co. of America v. Mosley, 179 Okla. 451, 66 P. 2d 35; Liverpool & London & Globe Ins. Co. v. Kearney, 180 U.S. 132, 21 S. Ct. 326, 45 L. Ed. 460. Where the terms of the contract are clear, consistent and unambiguous, no forced or strained construction should be indulged to give effect to the policy. Sovereign Camp, W.O.W. v. Howell, 176 Okla. 451, 56 P. 2d 138."

And in Fidelity & Casualty Co. of New York v. Gray, 181 Okla. 12, 72 P. 2d 341, we said:

"Of course, a contract of insurance, like every other contract, must be interpreted as a whole and every portion thereof given effect, if reasonably practicable."

If under the general rules above quoted and the numerous cases cited in support of those rules, a provision in an insurance policy providing that the company shall not be liable in any amount if the insured is killed by the beneficiary is valid and binding upon the parties, it logically follows that a provision limiting the liability of the insurance company in such case to a lesser sum than that provided in the policy is valid and binding upon the parties. As pointed out in the two cases last above cited, an insurance policy is a contract between the parties, and must be construed and given the same force and effect as any other contract would be. There is nothing in the statute prohibiting the insertion of such a provision in a policy, and subdivision (b), sec. 695 of 36 O.S. 1941, above referred to, which provides that the sum promised to be paid shall not be less than the face amount of the policy, undoubtedly refers to such amount as under the policy would be paid upon the happening of any specified contingency therein provided for.

In Grand Lodge, United Brothers of Friendship of Texas, etc., v. Lawson (Tex. Civ. App.) 203 S.W. 394, the court said:

"It is a general provision of law that contracts founded upon a valuable consideration, and not affected by fraud, accident, or mistake, will be enforced, unless the same be contrary to public policy. There is no suggestion of fraud, accident, or mistake in the instant case, and we know of no public policy that would be violated by enforcing the provisions of the contract above set out. Carrie Weaver voluntarily stipulated that in the event she should die by the hands of the beneficiary, her insurance certificate should be void. The association stipulated that in such event it should not be liable. The event occurred. Why should not this plain and unambiguous term of the contract be enforced?"

The reasoning in the Texas case applies with equal force in the instant case.

As to the above-quoted portion of 84 O.S. 1941 §231, relied upon by the administratrix, we find nothing in that section disclosing any intent on the part of the Legislature to restrict the right

of insurance companies to make provision in policies issued by them for such contingencies. In McDade v. Mystic Workers of the World, 196 Iowa, 857, 195 N. W. 603, the Supreme Court of Iowa considered an insurance policy which provided that if the death of the insured resulted from the act of the beneficiary the policy should be null and void and all moneys, rights and benefits provided thereunder should be forfeited. The statutes of the State of Iowa contained a provision identical with the above-quoted portion of 84 O.S. 1941 §231, and it was argued that under its provisions the heirs of the deceased insured were entitled to the amount specified in the policy, and that as to them the limitation in the policy was invalid and ineffective.

Referring to that statute and its effect upon the limitation contained in the policy, the Iowa court said:

"The statute was evidently meant to meet a situation where a policy of insurance is made payable to a beneficiary who takes the life of the insured, and where there is no provision whatever in the policy as to the disposition of the proceeds of the insurance. The contract of insurance in this case provides that in such contingency the proceeds of the policy of insurance and all moneys paid as premium are absolutely forfeited, and the contract becomes null and void."

—and further:

"The statute does not purport to be in any limitation upon the powers of insurance companies to contract for the disposition of the proceeds of a policy of insurance in the event that the life of the insured is taken by the beneficiary. As the statute now reads, we think it must be held to apply solely to a case where no contrary provisions are contained in the policy of insurance. If the Legislature has power to limit the right of insurance companies

to contract in this matter, it has not done so. If this provision in the policy were absolutely void, then the proceeds of the insurance certificate would pass, under the provisions of the statute, to the heirs of the insured. But the parties have contracted otherwise. Such a contract is not prohibited by the statute, and such a contract is not necessarily void because of being contrary to public policy. The case therefore resolves itself into a situation where parties to the contract provided that, in the event of the death of the insured at the hands of the beneficiary named in the policy, the policy becomes absolutely void, and the payments made thereunder are forfeited. Such a contract is not prohibited by statute, and it is not illegal as being against public policy. Therefore there is no legal reason why it should not be enforced."

No case has been called to our attention and, after a search of the authorities, we have found none, which holds that a provision of an insurance policy excluding or limiting liability where the insured is killed by the beneficiary is for any reason void or invalid, or not binding upon the parties. In view of the fact that the Legislature has not seen fit to prohibit the placing of such provisions in insurance policies in this state, we conclude that such provisions are valid and binding. It follows that the trial court in the instant case erred in failing to give force and effect to the provisions in the policies limiting the liability of the insurance companies in such case, and for such error the judgments must be reversed.

Reversed, with directions to render judgment for the administratrix and the minor heir on their answer and cross-petition in the sum of $150.

DAVISON, C.J., and CORN, GIBSON, LUTTRELL, HALLEY, JOHNSON, and O'NEAL, JJ., concur.