**PREFERRED RISK INSURANCE COMPANY n/k/a Guidant Elite Insurance Company, Appellant,**

v.

**Kenneth P. Cooper, Defendant,**

and

**Kimberly COOPER, Appellee.**

No. 00–0542.

Supreme Court of Iowa.

Jan. 24, 2002.

Philip H. Dorff, Jr. and Michael C. Walker of Hopkins & Huebner, P.C., Davenport, for appellant.

Michael K. Bush and James T. Carlin of Carlin, Hellstrom & Bittner, Davenport, for appellee.

CARTER, Justice.

Preferred Risk Insurance Company, now known as Guidant Elite Insurance Company (Guidant), appeals from a declar-

atory judgment requiring it to provide underinsured motorist benefits to Kimberly Cooper, one of the named insureds under Guidant's family auto policy. The district court's ruling was in response to cross-motions for summary judgment. The court concluded that as a matter of law underinsured motorist coverage must be provided to Kimberly Cooper because the policy issued by Guidant included such coverage, and she did not join in a later declination of that existing coverage as required by Iowa Code section 516A.1 (1997). After reviewing the record and considering the arguments presented, we affirm the judgment of the district court.

Defendant, Kimberly Cooper, and her husband, Kenneth, owned five vehicles. They were all insured by Guidant. Because Guidant limited the number of vehicles that might be insured under a single policy to four vehicles, the fifth vehicle was insured under a second policy. The provisions of the second policy were identical with the provisions of the policy insuring four vehicles. Kenneth and Kimberly were each shown as named insureds on the declaration pages of both policies.

In May 1998 an agent of Guidant was reviewing the Coopers' insurance coverage with Kenneth Cooper. Mr. Cooper expressed the view that his premiums were too high, and he would have to reduce his coverage in order to lower the premiums. This conversation led to a decision to delete the uninsured and underinsured motorist coverages that the existing policies provided.

To effect the deletion of uninsured and underinsured motorist coverage, Kenneth signed a written declination in compliance with Iowa Code section 516A.1.[1] At the time this document was signed, it only bore an identifying policy number for the insurance policy covering four vehicles. When the document reached the insurance company's home office, the policy number of the second policy insuring the fifth vehicle was added to the form declining uninsured and underinsured motorist coverage.

In August 1998 Kimberly Cooper and her daughter, Sarah, were involved in an

1. The applicable provisions of section 516A.1 provide:

No automobile liability or motor vehicle liability insurance policy insuring against liability for bodily injury or death arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided in such policy or supplemental thereto, for the protection of persons insured under such policy who are legally entitled to recover damages from the owner or operator of an uninsured motor vehicle or a hit-and-run motor vehicle or an underinsured motor vehicle because of bodily injury, sickness, or disease, including death resulting therefrom, caused by accident and arising out of the ownership, maintenance, or use of such uninsured or underinsured motor vehicle, or arising out of the physical contact of such hit-and-run motor vehicle with the person insured or with a motor vehicle which the person insured is occupying at the time of the accident. . . .

However, the named insured may reject all of such coverage, or reject the uninsured motor vehicle (hit-and-run motor vehicle) coverage, or reject the underinsured motor vehicle coverage, by written rejections signed by the named insured. If rejection is made on a form or document furnished by an insurance company or insurance agent, it shall be on a separate sheet of paper which contains only the rejection and information directly related to it. Such coverage need not be provided in or supplemental to a renewal policy if the named insured has rejected the coverage in connection with a policy previously issued to the named insured by the same insurer. In order to carry out the manifest intent of this legislation, we are convinced that a subsequent change in an insurance policy deleting the mandatory coverages must be carried out in the same manner as is required upon the issuance or delivery of the policy.

automobile collision. The collision claimed Sarah's life and caused serious permanent injury to Kimberly. The Coopers did receive some compensation from the insurance carrier of the other vehicle involved in the collision but Kimberly alleges that she was not compensated to the full extent of her damages.

In December 1998 Guidant filed a petition for declaratory judgment asking the court to determine that it was not obligated to pay underinsured motorist benefits to Kimberly Cooper. Both parties filed motions for summary judgment. Initially, the district court sustained Guidant's motion for summary judgment on the theory that Kenneth's declination of underinsured motorist benefits was binding on Kimberly. Following a series of 179(b) motions, the district court reversed its position and concluded that, as a matter of law, the underinsured motorist benefits of the policy continued to be available to Kimberly because she had not executed a declination in compliance with section 516A.1.

In seeking reversal of the district court's judgment, Guidant relies on decisions from other jurisdictions, which have similar statutes, holding that in acquiring automobile insurance one spouse has the right to decline underinsured-motorist coverage on behalf of the other spouse. Those decisions are *Messerly v. State Farm Mutual Automobile Insurance Co.*, 277 Ill.App.3d 1065, 214 Ill.Dec. 794, 662 N.E.2d 148, 149 (1996), and *Hall v. Allstate Insurance Co.*, 53 Wash.App. 865, 770 P.2d 1082, 1083 (1989). The premise on which these cases were decided is that, if A relies on B to acquire insurance for A, A only receives the insurance for which B arranges.

■ We are convinced that the rationale of the Illinois and Washington appellate courts is flawed. If the insurance that is being acquired is subject to a statute mandating that the insurer include certain specified coverages in all policies unless expressly declined in writing by the named insured, a person relying on another to make him or her a named insured may reasonably expect that the coverages obtained will be those mandated by law. That is the conclusion reached by the Oklahoma Supreme Court in *Plaster v. State Farm Mutual Automobile Insurance Co.*, 791 P.2d 813, 814–15 (Okla.1989) (when statute requires written rejection by named insured, rejection by one insured was inoperative as to another insured who had not executed a written rejection).

■ There is another reason why the rationale of the Illinois and Washington appellate courts is inapposite. That rationale is not relevant here because the situation involves a rejection of existing insurance rather than the acquisition of new insurance. We agree with the district court's conclusion that, because Kimberly Cooper did not reject the underinsured motorist coverage existing under the family auto policy, that coverage continued in force as to her, notwithstanding Kenneth's later declination of such coverage.

As a backup argument, Guidant urges that, even if Kenneth's declination is determined not to be binding on Kimberly, factual issues remain in the case precluding the grant of summary judgment in Kimberly's favor. In reviewing the motion papers, we find no facts asserted by Guidant that would defeat Kimberly's claim. Its argument that factual issues remain only states that "[i]f allowed to present additional evidence, [Guidant] would show Kimberly Cooper was not involved in the procurement of the liability and/or underinsured motorist coverage." The controversy involves the deletion of coverage from an existing policy in which Kimberly was a named insured. Consequently, her involvement at the time the underinsured motorist coverage was initially obtained is

not relevant. With respect to her involvement at the time Kenneth attempted to delete that coverage, a lack of involvement on her part aids rather than detracts from her claim.

As a final issue, we consider Guidant's invitation to hold as a result of our decision in *Preferred Risk Mutual Insurance Co. v. Federated Mutual Insurance Co.*, 611 N.W.2d 283 (Iowa 2000), that Kimberly's coverage, if any exists, is limited to the minimum coverage required by law. As we have noted, the issue that has been presented is whether Kimberly later declined the underinsured motorist coverage that existed when the policy was issued. Based on our conclusion that she did not, the limits are those that the policy provided.

We have considered all issues presented and conclude that the judgment of the district court should be affirmed.

**AFFIRMED.**